IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| Gables Ventures, LLC | ) | No. 09 B 18265 |
| | ) | |
| Debtor. | ) | *Hon. Carol A. Doyle* |

## MORGAN & BLEY, LTD.'S FIRST AND FINAL FEE APPLICATION

Now come Keevan D. Morgan and Joel E. Blumenfeld of Morgan & Bley, Ltd. (the "Attorneys"), attorneys for the Debtor, Gables Ventures, LLC ("Debtor") in this matter, and hereby submit their First And Final Fee Application (the "Application") for attorneys' fees and reimbursement of expenses pursuant to §330 of the United States Bankruptcy Code (the "Code") and Bankruptcy Rule 2016 for legal services performed during the period May 29, 2009 through April 7, 2010 (the "Application Period"). The predicates for relief requested herein are 11 U.S.C. §§ 105(a), 330, as supported by Rules 2002(a)(6), 2016(a), and 9034(e), and Local Rule 5082-1. In support of this Application, the Attorneys state as follows:

### §I. Summary Of Results Obtained

1. On August 4, 2009, this Court entered an Order authorizing the Attorneys to represent the Debtor in this matter retroactively, throughout the Application Period.

2. Since authorizing the Attorneys' employment, the Debtor's forecast has improved dramatically in conjunction with each Creditor's prospect of full or at least partial repayment. During the Application Period, the Attorneys' took a number of key measures to effectively "right the ship" in this case, and ultimately obtain highly favorable results for everyone involved as follows:

(a) Recognizing the profitability of the Debtor's Real Estate Property Tax Certificate business, especially in this poor economic climate, the Attorneys assisted the Debtor in its decision to convert this case from one under Chapter 7 to Chapter 11.

(b) By providing clear instructions to and maintaining contact with the County Clerks, Treasurers and, in some cases, State's attorneys within 18 Illinois State Counties, the Attorneys were able to preserve any funds retained by such Counties in connection with the Debtor's tax certificates (hereafter, the "Certificates") that may have otherwise been affected by inaction.

(c) After careful review and analysis of the Illinois Property Tax Code, the Attorneys succinctly provided Creditors herein with an explanation of the same as applied to the Certificates. This information undoubtedly played a key role in obtaining favorable votes from all Creditors except Centrust Bank, N.A. ("Centrust") heading into the Debtor's confirmation hearing, and then worked with Centrust, which eventually led to Centrust changing its vote to one in favor of Confirmation.

(d) The Debtor's confirmed Plan, which ultimately received unanimous support, will maximize the return on the Debtor's investment in the Certificates for the benefit of all Parties to this Chapter 11 proceeding.

### §II. Summary Of Services Rendered

3. On May 20, 2009, (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 7 of the Code. Subsequently, this case was converted to one arising under Chapter 11 of the Code on June 10, 2009 (the "Conversion Date"). Thereafter, on July 31, 2009, the Debtor filed its Plan, which proposed to repay all unsecured creditors in full. Pursuant to Sections 1107 and 1108 of the Code, the Debtor has retained possession of its assets and is thereby authorized to continue the operation and management of its business as Debtor-In-Possession.

4. During the Application Period, the Attorneys represented the Debtor in connection with this Chapter 11 case. Specifically, the Attorneys' services comprised of, but were not limited to the following: (a) Successfully converting this case from Chapter 7 to Chapter 11; (b) preparing and

filing the Debtor's Schedules and Statement of Financial Affairs; (c) notifying and working with 18

Illinois state county treasurers to keep them appraised of the pending bankruptcy and its effect on

the Debtor's Certificates and any monies collected in connection with the same; (d) drafting the

Debtor's Chapter 11 Plan and amending the same; (e) drafting the Debtor's disclosure statement and

amending the same, which included a simplified explanation of the Illinois Property Tax Code as

applied to this matter for the purpose of informing creditors herein about the complexities of this

Chapter 11 case; (f) drafting and serving all creditors and parties in interest with the Debtor's Plan,

Disclosure Statement and ballots in connection with confirmation; (g) objecting to Centrust's Motion

To Modify stay and successfully negotiating a resolution of the same; (h) reviewing extensive expert

reports in connection with the properties secured by the Debtor's Certificates; (i) lobbying for the

votes of necessary creditors in furtherance of the Plan's confirmation; (j) assisting the Debtor with

the process of preparing and filing its Monthly Operating Reports; (k) drafting the Debtor's Motion

For Use Of Cash Collateral; (l) drafting the Debtor's Motion To Bar Centrust's Expert; (m)

attempting to procure certain documents responsive to the Debtor's requests to produce; and (n)

preparing for the contested confirmation hearing involving numerous motions. For the Court's

convenience, these services have been separated into the categories and are set forth in detail within

Section 5 below.

### §III. Additional General Information

5. This is the Attorneys' First and Final Fee Application in this case.

6. The Attorneys previously received a **$7,500.00** retainer in connection with this matter.

7. No agreement or understanding exists between the Attorneys and any other entity for a

division of compensation and reimbursement to be received herein or in connection with this case.

8. Several legal professionals employed by the Attorneys performed services regarding this matter. A breakdown of each Attorney's hourly rate and the number of total hours expended thereby in providing legal service is as follows:

| PROFESSIONAL | TOTAL HOURS | FEES AT ATTORNEY RATE |
|---|---|---|
| Keevan D. Morgan | 89.2 @ 435.00/hr | $38,802.00 |
| Joel E. Blumenfeld | 145.2 @ $185.00/hr | $26,862.00 |
| **TOTAL** | **234.4 Hours[1]** | **$65,664.00** |

9. During the Application Period, every reasonable effort was made to have the services rendered to the Debtor performed by the qualified professional charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

10. The Attorneys respectfully submit that their services to the Debtor during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

11. The Attorneys maintain computerized records of the time expended by each Attorney. Such records are attached hereto as **Exhibit A** and are incorporated by reference (the "Billing Statements"). The Billing Statements set forth in detail the services which the Attorneys rendered on behalf of the Debtor, the dates those services were rendered, the nature of the services, the amount of time spent on each task, and the identity of each Attorney who performed such services. The Billing Statements have been edited for privilege purposes. A detailed synopsis of the Billing Statements appears in Section 5 below.

12. The Attorneys also maintained records of all actual and necessary expenses incurred in

---

[1]     The Attorneys also "no-charged" approximately **$1,209.00** in fees during the administration of this case.

connection with the services provided to the Debtor, which are included in the Billing Statements. The Attorneys advanced **$998.06** in expenses on behalf of the Estate in connection with the legal services rendered to the Debtor during the Application Period as detailed on the Billing Statements.

## §IV. Standards For Compensation & Compliance Therewith

13. The Court may award a professional person employed under § 327, such as the Attorneys, "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A).

14. Pursuant to Section 330(a)(1)(A) of the Code the court may award, "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by such person, after notice to parties in interest and the United States Trustee and a hearing."

15. If the services of an attorney employed under §327 are reasonably likely to benefit a debtor's estate, they should be compensated. *In re: Pro-Snax Distributors, Inc.*, 157 F.3d 414, 421 (5th Cir. 1998). Factors to be considered in making an award for interim fees depend on "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of a bankruptcy case and related adversary proceedings." *In re: Spanjer Bros., Inc.*, 191 B.R. 738, 748 (Bankr. N.D. Ill. 1996) (Squires, J.). While services in a confirmed Chapter 11 case may not *ipso facto* be compensable, the Attorneys posit that such services are entitled to a strong presumption that they were necessary and beneficial.

16. The Court may also reimburse a professional person employed under §327 for actual and necessary expenses. Title 11 U.S.C. §330(a)(1)(B).

17. The fees charged by the Attorneys are billed in accordance with the firm's customary billing rates in effect during the period for which compensation is sought. The rates charged by the Attorneys in this case are the same rates charged for professional services in comparable non-bankruptcy cases, and in fact, based upon the Attorneys' experience, appear to be somewhat lower. Staffing was accomplished efficiently.

18. All professional services and costs were necessary and appropriate to the administration of this bankruptcy case.

19. The Attorneys have sent notice of this Motion in the form attached hereto as **Exhibit B** to all interested parties and the United States Trustee on 20 days notice.

## §V. Categories & Details Of Services Rendered

| Category Name | Description Of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| Admin.Employ | Drafted, revised & submitted a Motion To Employ the Attorneys. | 2.7 | $624.50 |
| Admin.General | General administrative services performed on the Debtor's behalf. | 7.6 | $1,981.00 |
| Admin.Reports | Services rendered with respect to the preparation, filing, execution and review of the Debtor's monthly operating reports. | 2.7 | $899.50 |
| Admin.UST.Fees | Services rendered with respect to payment of U.S. Trustee's fees. | 2.0 | $495.00 |
| Admin.341 | Services rendered in connection with the §341 meeting in this case. | 4.6 | $1,626.00 |

| Category Name | Description Of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| Admin.SS | Services rendered in connection with the preparation, filing and review of bankruptcy schedules and Statement of Financial Affairs in this matter. | 9.7 | $2,119.50 |
| Admin.Scheduling Order | Services rendered in connection with the process of drafting, revising and submitting the Scheduling Order regarding confirmation matters with the Court. | 2.4 | $494.00 |
| Cash.Confer | Services rendered in connection with necessary conferences related to litigating the Debtor's Motion for Use of Cash Collateral. | 4.9 | $1,631.50 |
| Cash.Counties | Services rendered in connection with Illinois State Counties related to litigating the Debtor's Motion for Use of Cash Collateral. | .2 | $87.00 |
| Cash.Draft | Services rendered in connection with drafting the Debtor's Motion for Use of Cash Collateral. | 19.7 | $4,319.50 |
| Cash.Expert | Services rendered in connection with expert witnesses regarding the Debtor's Motion for Use of Cash Collateral. | 10.7 | $3,454.50 |
| Cash.Hearing | Services rendered in connection with the hearing regarding the Debtor's Motion for Use of Cash Collateral. | 2.1 | $838.50 |

| Category Name | Description Of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| Cash.Research | Services rendered in connection with research performed regarding the Debtor's Motion for Use of Cash Collateral. | 11.6 | $2,246.00 |
| Cash.Settlement Attempt | Services rendered in connection with settlement attempts related to the Debtor's Motion for Use of Cash Collateral. | 1.5 | $652.50 |
| Claims.American Express | Services rendered regarding American Express's proof of claim. | .1 | $43.50 |
| Claims.Clarke | Services performed regarding Clarke County Bank's claim. | .9 | $316.50 |
| Claims.Walker | Services performed regarding Walker Ventures's claim. | 1.4 | $434.00 |
| Convert | Services rendered in connection with Debtor's Motion To Convert Case from Chapter 7 to Chapter 11. | 5.7 | $1,729.50 |
| Counties | Services rendered in connection with the process of preserving the Debtor's interest in Tax Certificates within 18 Illinois State Counties, and communicating with the Counties themselves. | 8.9 | $1,696.50 |
| Disclosure | Services rendered with respect to the Debtor's Disclosure Statements. | 19.2 | $6,052.00 |
| Fees | Services rendered in connection with this First and Final Fee Application. | 14.8 | $3,113.00 |

| Category Name | Description Of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| Plan.Ballot Report | Services performed with respect to the Debtor's Ballot Report in connection with its Chapter 11 Plans. | 2.1 | $413.50 |
| Plan.Centrust | Services rendered in connection with the Debtor's Chapter 11 Plans with respect to Centrust Bank, N.A. | 7.2 | $2,057.00 |
| Plan.Clarke | Services rendered in connection with the Debtor's Chapter 11 Plans with respect to Clarke County State Bank. | 1.3 | $390.50 |
| Plan.Confer | Services rendered in connection with conferences with respect to the Debtor's Chapter 11 Plans. | 1.7 | $714.50 |
| Plan.Confirm | Services rendered with respect to the process of confirming the Debtor's Chapter 11 Plans, and in connection with the March 10, 2010 Confirmation Hearing on the same. | 2.4 | $969.00 |
| Plan.Draft | Services rendered in connection with drafting, revising and Amending the Debtor's Chapter 11 Plans. | 12.0 | $3,145.00 |
| Plan.Final Negotiations | Services performed with respect to final negotiations concerning the Debtor's Chapter 11 Plans. | 4.4 | $1,739.00 |
| Plan.General | General services rendered with respect to the Debtor's Chapter 11 Plans. | 1.1 | $353.50 |

| Category Name | Description Of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| Plan.Hearing | Services performed in connection with the confirmation hearing related to the Debtor's Chapter 11 Plans. | 24.0 | $6,715.00 |
| Plan.Projections | Services rendered concerning the process of evaluating property of the estate for purposes of drafting the Debtor's Chapter 11 Plans and confirming the same. | 4.3 | $1,8750.50 |
| Plan.Walker | Services rendered in connection with the Debtor's Chapter 11 Plans with respect to Walker Ventures, LLC. | 2.2 | $707.00 |
| Stay.Centrust | Services rendered with respect to Centrust Bank, N.A.'s Motion To Modify Stay. | 13.6 | $5,641.00 |
| Stay.Centrust. Discovery | Services rendered in connection with Discovery related to Centrust Bank, N.A.'s Motion To Modify Stay. | 9.2 | $2,352.00 |
| Stay.Centrust. Limine | Services performed with respect to the Debtor's Motion in Limine and Rule 37 Motion to Bar Expert Testimony. | 12.6 | $2,956.00 |
| Stay.Centrust. Vacate | Services rendered in connection with vacating the Order granting Centrust Bank, N.A. relief from the automatic stay. | 1.9 | $351.50 |
| Stay.Walker | Services performed with respect to Walker Ventures, LLC's Motion for Stay Relief. | 1.0 | $435.00 |

**ADMIN.EMPLOY:** Drafted Motion to Employ; Drafted Affidavits in support of Motion to Employ; Drafted Proposed Order; Drafted Notice of Motion; Drafted Minute Order; Filed Motion To Employ with the Bankruptcy Court; Reviewed ECF notification and Orders regarding employment of counsel and vacating stay orders for Centrust.

**ADMIN.GENERAL:** Conferences with clients regarding status of case; Conferences with Elena Gallo regarding Debtor's Operating Agreement; Conferences regarding; Drafted and Filed Appearances; Located proper service addresses; Meet & Confer regarding completion and filing of creditor matrix for upload to the Bankruptcy Court; Reviewed email from the Court regarding failure to submit creditors; Brief conference regarding taxes; Scheduling Conferences regarding meetings between Attorneys and Debtor representatives; Prepared for meeting with client regarding Chapter 11 issues; Conducted UCC searches; Conferences with client regarding the need for a signed retainer agreement; Reviewed letter from the U.S. Trustee regarding requirements; Conference with the U.S. Trustee's office regarding status of this matter and to clear up misconceptions about whether we intended to appear at preliminary meeting; Research regarding *In Re: Kasco*, Conferences regarding status of Discovery, Motion To Vacate Order of Relief From Stay; Plan and Disclosure Statement; Reviewed Jim Wolfe resume; Conferences regarding outcome of 8/4/2009 hearing; Assembled documents for KDM's hearing; Contacted the ECF help desk to determine proper filing procedures for change of address; Downloaded 1st Amended Plan from BK docket and emailed to client; Conference with client regarding DIP account.

**ADMIN.REPORTS:** Emails with U.S. Trustee's office regarding monthly reports; Conferences regarding clients questions in connection with preparation of the Reports; Conferences regarding scheduling appointments with client regarding preparation of the Reports; Meetings with client regarding preparation of Reports; Filed Reports.

**ADMIN.UST.FEES:** Reviewed U.S. Trustee's Statement of Fees; Meetings with client regarding payment of U.S. Trustee's Fees; Contacted U.S. Trustee's office to determine whether outstanding fees remained unpaid; Conference with U.S. Trustee's office confirming that the Debtor's payments are up to date; Email to Burns & Crane re: payment of UST fees; Drafted a cover letter to the U.S. Trustee's office regarding payment of outstanding U.S. Trustee's fees; Reviewed U.S. Trustee's Amended request for payment of fees; Emails to clients regarding need to pay U.S. Trustee's fees; Received a check via messenger from client RE payment of U.S. Trustee's fees.

**ADMIN.341:** Meetings before preliminary 341 meeting with the Trustee; Reviewed file prior to preliminary 341 meeting with the Trustee; Meeting with Wilkes & client's representative before the preliminary 341 meeting; Prepared for the 341 Meeting; Attended the 341 meeting in this case.

**ADMIN.SS:** Drafted Motion For Extension to file Schedules & SOFA; Research regarding Motion For Extension to file Schedules & SOFA; Conference with client regarding Schedules; Email to client with blank Schedules & SOFA attached; Calculated value of certain assets; Brief discussion with client regarding tomorrow's meeting for completion of Schedules and SOFA; Meetings

regarding completion of Schedules & SOFA; Amended Schedules; Emails to client regarding the need to complete Schedules & SOFA; Filed Schedules with the Court; Meeting with client to go over Schedules & SOFA thoroughly regarding filing; Conference with client explaining that we need all information concerning the SOFA; Conference regarding the SOFA; Reviewed question #3 on the SOFA to determine any necessary amendments to same. Reviewed all checks during the 90 day period immediately preceding the petition date in this matter and analyzed same; Drafted SOFA.

**ADMIN.SCHEDULING.ORDER:** Review scheduling order; Meet with JB regarding the Court's scheduling Order he is to prepare; Drafted Order & Notice regarding setting hearing on Plan, Cash Collateral Motion & Motion for Relief From Stay; Conference with KDM regarding Scheduling Order & Notice; Revised Scheduling Order & Notice pursuant to KDM's instructions; Revised Order & Notice regarding confirmation, et. al. in accordance with the example sent to me by Judge Doyle's Courtroom Deputy; Revised Order & Notice pursuant to KDM's instructions.

**CASH.CONFER:** Meet with Fred Billings & Jim Wolfe regarding cash collateral and projections to be made in support thereof; Meet with JB regarding cash collateral Motion; Conference with KDM regarding Section 363 of the Bankruptcy Code; Conference with KDM regarding outstanding issues regarding Memorandum. Reviewed case law and subsequently determined that the provision cited in the draft Motion was correct; Conferences with KDM regarding the valuation of the certificates; Contacted Jim Wolfe to verify accuracy of figures in Motion; Meetings with KDM and conference with Jim Wolfe regarding final corrections to Motion for Cash Collateral; Conference with KDM regarding Proposed Order and final revisions to same.

**CASH.COUNTIES:** Conference with Fred regarding redemption check for about 12K received from Iowa; Review Sangamon County's report on additional redemption.

**CASH.DRAFT:** Drafted Motion for Use of Cash Collateral; Continued drafting Motion for Use of Cash Collateral; Revised draft of Motion for Use of Cash Collateral and submitted same to KDM for review; Revised Proposed Order regarding Cash Collateral use; Amended Cash Collateral Motion in light of updated chart & budget and to include an equity cushion calculation with respect to all creditors in addition to Centrust; More revisions to Motion for Use of Cash Collateral; Made changes to our Cash Collateral Motion pursuant to KDM's instructions; Revise the Motion for Use of Cash Collateral; Conferences with KDM regarding Motion for Cash Collateral, and made amendments thereto pursuant to his instructions; Work on Cash Collateral Motion; Revised Motion for Cash Collateral pursuant to KDM's instructions; Numerous additional revisions to Motion for Cash Collateral and all related documents; Final revisions to Cash Collateral Motion.

**CASH.EXPERT:** Reviewed opposing expert's report and analyzed same in relation to our expert's projection; Meeting with KDM in which we reviewed our valuation spreadsheet and the opposing expert's report; Analysis of budget in relation to the big picture here; Detailed analysis of Centrust's report to determine any errors therein. Contacted Jim Wolfe to determine the bottom line minimum return on the Certificates if all redeem; Received request from KDM to the effect that Jim Wolfe draft a cover letter with his updated spreadsheet and budget; Conference with Jim Wolfe regarding

updated figures; Reviewed new chart & budget from Jim Wolfe; Reviewed the new Wolfe report and analyzed same with KDM; Emails with Jim Wolfe regarding his deposition schedule; Email with other counsel regarding our expert's report; Email to Jim Wolfe with a draft Motion attached requesting that he double check all the figures therein; continue to work with JB on the Motion for Leave to use cash collateral, which included an analysis of both our expert's report & their expert's report and the features of the Illinois tax sale law; Review letter from opposing counsel regarding experts; Conference with Jim Wolfe regarding the additional information requested of him by Centrust's lawyer; Conference with Jim Wolfe; Email to Ian Burns with additional information from Jim Wolfe he requested; Review their expert's reports and recently tendered documents regarding the evidentiary hearing; conference with Jim Wolfe regarding their expert's report; Conference with JB and Jim Wolfe regarding costs for any party dealing with the portfolio; Reviewed final Gables redemption report; Review order on Motion to Strike our expert witness testimony.

**CASH.HEARING:** Review documents and strategize regarding trial issues; Review Centrust's response to Gables's Motion to use cash collateral; Strategize regarding how to deal with Centrust's Objection to the Debtor's Motion to Utilize Cash Collateral as far as the issues revised therein and review their expert's report and our expert's report regarding these issues; Reviewed and assessed Centrust's Response to our Motion for Cash Collateral.

**CASH.RESEARCH:** Research regarding Section 363 of the Bankruptcy Code in connection with our Motion for Use of Cash Collateral; Research regarding Bankruptcy Rules 2002, 4001, 9014 and Local Rule 4001-2; Research regarding applicable time frame within which redemption is possible; Research regarding the Illinois Property Tax Code in connection with certain applicable deadlines with respect to the submissions of Petitions for Deeds in this case; Prepared a draft Notice of Motion pursuant to applicable local rules; Review various ECF orders regarding continuation of Centrust's Motion for Relief from Stay; Research regarding notice of the Motion in light of the cash collateral hearing already having been set; Pursuant to KDM's instructions, performed extensive research regarding real estate tax certificates and the process of purchasing to Petitioning for Deed from A-Z. Prepared a step-by-step analysis of this process and submitted the same to KDM for review; Filed Motion for Cash Collateral with the Bankruptcy Court; Copied and assembled all documents for filing; Assembled Exhibits necessary to file the Motion; Email to opposing counsel regarding some additional background from us and discovery schedule; Email to Burns regarding agent discovery; Assembled documents in connection with Cash Collateral Motion for trial book; Review email and lengthy attachments for outline of content thereof regarding discovery.

**CASH.SETTLEMENT.ATTEMPT:** Conference with Ian Burns, the attorney for the Bank, regarding a workout; Meet with Fred regarding alternatives and try to reach bank regarding a workout with a message to call back or to have its lawyer call if it has one on the matter; Conference with client regarding conference with opposing counsel; Conference with client regarding the Bank's rejection of settlement at this time and the need to proceed in the bankruptcy court; Conference string with Belongia, Wolfe, and Billings regarding the settlement meeting and email from Belongia confirming same; More emails regarding the settlement meeting; Conference with Jim Wolfe regarding the meeting with the bank is set for Wednesday; Conference with Jim Wolfe; Email exchange with Mark Belongia regarding Centrust Dispute.

**CLAIMS.AMERICAN EXPRESS:** Review proof of claim filed today.

**CLAIMS.CLARKE:** Reviewed Clarke County Bank documents and analyzed same; conference with Eugene Crane, who has been retained by Clarke County Bank; Obtained Clarke County Bank's Proof of Claim; Reviewed Clarke County Bank's Proof of Claim; Conference with Gene Crane regarding Clarke County's Proof of Claim.

**CLAIMS.WALKER:** Research regarding State Court lawsuit against Walker Ventures, LLC; Left a voicemail for Elena Gallo regarding State Court litigation concerning the Debtor; Reviewed docket in Walker Ventures v. Gables Ventures, et. al.; No. 08 CH 03458, and incorporated it into our client's answer to SOFA question #4; Reviewed Walker Venture's Objection to plan confirmation; Conference with Elena Gallo regarding State Court action that has apparently been dismissed pending a written order and the re-filing against Gables is expected; Review file regarding any information about this claim; Conference and client regarding meeting; Review email regarding Walker Ventures/WSM deposition; Review Walker Ventures's objection to claims.

**CONVERT:** Drafted a Motion For Conversion to Chapter 11; Research regarding a Motion For Conversion to Chapter 11; Drafted Proposed Orders for both the Motion For Conversion and Motion For Extension of Time To File Schedules and SOFA; Drafted Minute Orders for both the Motion for Conversion and Motion For Extension of Time to File Schedules and SOFA; Final revisions to Motions to Convert; Attend court regarding Debtor's Motion to Dismiss Bankruptcy, which was continued; Attend Court hearing regarding Motion To Convert to Chapter 11.

**COUNTIES:** Reviewed Section 362 of the Bankruptcy Code in connection with template for Notices of Bankruptcy to County Clerks; Drafted template for Notices of Bankruptcy to County Clerks; Reviewed Jim Wolfe County Clerk spreadsheet; Contacted Lake County Clerk regarding where notice of bankruptcy must be sent; More revisions after speaking to County Clerks; Revised template; Drafted letters to each County Clerk with corresponding PIN numbers in connection with previous notice of bankruptcy letter; Identified Certificates by respective counties; Drafted correspondence to the Livingston County Clerk; Conferences with numerous county clerks and treasurers regarding correspondence requesting a freeze on the certificates; Drafted a fax to Kelly Bergae at the Sangamon County Clerk's office to which I attached my initial July 31, 2009 letter and the Debtor's Bankruptcy Petition; Explained the redemption situation to the St. Clair County Clerk over the phone; Drafted a separate letter to the St. Clair County Clerk regarding redemption; Conversation with Ben Henning from the St. Clair County States Attorney regarding my Notice of Bankruptcy to the Treasurer in which I explained the situation to him in more detail; Conversation with Heidi Wellen from the State's Attorney's office in Rock Island County; Drafted correspondence to Heidi Wellen clarifying redemption issues per her request; Spoke with Tazewell County Treasurer and Clerk regarding tax certificate issues; Conference with Bob Powers at the Sangamon County State's Attorney's office regarding tax certificates; Reviewed notice from Sangamon County showing $15,457.14 in redemption funds for that county so far.

**CREDITORS:** Served Motions To Convert from Chapter 7 to Chapter 11 and For Extension of Time to file Schedules & SOFA by regular mail; Meetings regarding Motion for Extension of time to file Schedules & SOFA; Obtained a service address from Centrust; Filed Motions to Convert from Chapter 7 to Chapter 11 and For Extension of Time to file Schedules & SOFA by regular mail.

**DISCLOSURE:** Drafted Disclosure Statement; Revised Disclosure Statement; Conferences regarding the contents of the Disclosure Statement; Final changes to the written portion of the Disclosure Statement (as opposed to the exhibits); Filed Disclosure Statement; Served Disclosure Statement; Conference with client regarding parts of the Disclosure Statements he needs to provide information concerning; Drafted Liquidation Analysis; Drafted History of the Debtor; Conferred with Jim Wolfe regarding his projections; Reviewed Court Order regarding Disclosure Statement; Emails with Cameron Gulden of the U.S. Trustee's office regarding the Disclosure Statement hearing; Attended court regarding the Disclosure statement; Prepared for hearing regarding the Disclosure Statement; Drafted 1st Amended Disclosure Statement; Filed 1st Amended Disclosure Statement.

**FEES:** Meetings regarding fee application; Reviewed Section 330 of the Bankruptcy Code and corresponding local rules in connection with a fee application; Reviewed Fee Application templates; Completed preliminary draft of Fee Application; Revised Fee Application; Estimated time to appear in Court on first and final fee petition.

**PLAN.BALLOT REPORT:** Drafted a Ballot Report in this matter along with all requisite exhibits; Reviewed the docket in this matter regarding amended and additional ballots to be case; Revised the Ballot Report and all requisite exhibits pursuant to the new ballots; Conference with KDM regarding balloting issues; Filed ballot report with the Bankruptcy Court; Conference with JB regarding Ballot Report.

**PLAN.CENTRUST:** Review Centrust's Objection to Plan; Email to Ian Burns, Centrust's Lawyer, regarding today's hearing to bring him up to speed; Reviewed email correspondence between KDM and Centrust; Emails with Mark Belongia, Centrust's lawyer, regarding tomorrow's meeting between our expert, Jim Wolfe and Mr. Benson of the bank regarding settlement and that it will be all off the record, which he ok'd and to remind him that ballots are due tomorrow; Conference with Jim Wolfe regarding his meeting with the bank today; Email string with Belongia regarding what is going on because I have no confirmation of the agreement; Strategize regarding how to deal with Centrust's Objection to Plan; Email chain with JB regarding Centrust's incomplete discovery; Review Centrust's Objection to the Plan; Email to Burns about the breakdown in the settlement; Reviewed case law regarding Motion to Disqualify Vote; Drafted a Motion to Disqualify Centrust's Vote; Research regarding Motion to Disqualify Vote; Drafted a subpoena to John Benson, president of Centrust Bank; Review legal research regarding Motion to Disqualify Centrust's ballot; Email to KDM requesting all parties to be subpoenaed for Wednesday's hearing; Reviewed several emails between KDM and the other side regarding bad faith voting; Email to Ian Burns regarding redeemed property list and a couple of details related thereto; Emails with Wolfe and Burns to get the final current redemption figures; Conference with Ian Burns regarding Centrust's settlement language;

Review settlement language sent by Centrust; Revise settlement language sent by Centrust's lawyer; Email to Burns regarding he must get his proposed order to use ASAP and response back from him that he will.

**PLAN.CLARKE:** Email to Gene Crane, who represents the Iowa Bank, regarding ballots are due tomorrow; Located a case regarding the validity of late filed ballot reports and emailed same to KDM; Conference with Art Simon and KDM regarding Clarke County State Bank's ballot; Emails and conferences with Art Simon regarding his client getting a vote on file; Emails with Art Simon, the attorney for Clarke County Bank, regarding balloting; Conference with Art Simon and KDM regarding Clarke County Bank's vote in favor of the Plan.

**PLAN.CONFER:** Meet with JB regarding drafting a Plan and Disclosure Statement; Meet with JB regarding changes to the Plan; Conference with KDM regarding plan and Disclosure Statement; Conference with client regarding status; Meet with client regarding overall situation; Conference with Jim Wolfe; Emails with Cameron Gulden of the U.S. Trustee's office regarding the outcome of confirmation hearing; Meet with Jim Wolfe regarding what else needs to be done now that the plan is confirmed; Review the ECF orders entered on various matters related to today's confirmation hearing; Reviewed correspondence regarding confirmation; Reviewed email from the Bankruptcy Court regarding confirmation; Touch up the attachment to the confirmation order and email it to the Courtroom Deputy; Emails with Courtroom Deputy and other counsel regarding entry of the Confirmation Order.

**PLAN.DRAFT:** Reviewed similar Chapter 11 plans for reference concerning this matter; Work on drafting Chapter 11 plan in this matter; Continued working on Chapter 11 plan; Revised Chapter 11 plan; Revied and completed preliminary draft of Chapter 11 plan. Submitted same to KDM for review; Revised Plan pursuant to KDM's instructions; Revised Chapter 11 Plan and submitted final draft to KDM; Revise the Plan of Reorganization; Final revisions to Plan; Reviewed KDM's revisions and amended Plan in accordance with his instructions; Revised Plan pursuant to KDM's instructions; Revise Plan; More drafting of Plan; Make my final changes to the Plan and get it filed and served; Touch up the Plan; Finish the Plan; Revise the new language regarding the Plan execution provision.

**PLAN.FINAL NEGOTIATIONS:** Conference with client regarding completion of the confirmation Order and payment provisions and how things must be paid in the strict order of priority; Conference with Gene Crane regarding a change he wanted in the confirmation agreement; Conference with Ian Buns; Conference with Fred Billings regarding proposal where the Bank is the disbursing agent and the Debtor gets a budget to liquidate; Conference with client regarding all issues; Review new budgets sent to me; Conference with Jim Wolfe regarding his budget using the numbers Fred gave to him; Email chain with client regarding his proposed budget and negotiations with the bank; Long conference with client; Review and respond to email from Belongia regarding Ian Burns is no longer with his firm; Long conference with Fred Billings and Jim Wolfe regarding future budget; Email to Belongia regarding the proposed phase 1 and phase 2 compromise; Review emails from Courtroom deputy regarding the confirmation order; Conference with Belongia who

okays budget; Email string with all counsel regarding the language back and forth for the means for executing plan and finally email to the Courtroom deputy with the final forms; Conference with Fred regarding to his final position.

**PLAN.GENERAL:** Conference string with Belongia, Centrust's lawyer, Wolfe & Billings regarding settlement; Reviewed recently filed documents regarding confirmation and the outcome of yesterday's hearing regarding continuation; Conference with Jim Wolfe regarding the fact that some of the money is needed soon for petitions; Emailed Gene Crane a Ballot regarding the Plan; Review email from client regarding the plan; Filed the Debtor's 1st Amended Plan with the Court.

**PLAN.HEARING:** Research regarding whether LLCs are required to comply with non-voting equity security provisions in Rule 1123(d); Prepared Trial Book in connection with Amended Plan and Disclosure Statement; Reviewed relevant code provisions and case law in connection with trial book preparation; Received assignment and discussed same with KDM regarding assembly of trial notebooks; Work with JB regarding confirmation issues; Reviewed case law in connection with 3/10/10 hearing; Research for trial book and upcoming 3/10/10 hearing; Email to KDM regarding the status of my research; Review the Debtor's Schedules, First Amended Disclosure Statement, First Amended Plan to begin preparation for the new contested hearings; Conference with Jim Wolfe regarding confirmation hearing; Another conference with Wolfe regarding confirmation hearing; Conferences with KDM in which we determined exhibits in preparation of Wednesday's hearing; Conference with KDM regarding trial book; Conference with Billings regarding Wednesday's hearing; Worked on trial book; Prepare outline for tomorrow's hearing; Assisted with trial book preparation; Downloaded and printed cases for KDM; Detailed review of the In Re: Addison Properties case; Conferences with KDM regarding trial book preparation; Intermittent meetings all day with JB regarding the various matters he is working on regarding tomorrow's hearing; Meeting with Fred Bilings and Jim Wolfe regarding tomorrow's hearing; Develop miscellaneous questions for Fred Billings should he be needed as a witness; Located the case of In Re: Addison Properties; Conference with KDM regarding strategy for tomorrow's hearing; Review all the relevant law for tomorrow's hearing; Prepare outline for tomorrow's hearing; Hearing regarding multiple issues; Attend hearing on the confirmation of the Plan and all the related matters set for today and get the matter resolved and the plan confirmed; Get to the office about 6:45 a.m. and go through all of the trial materials regarding the evidentiary hearing set for today for additional general and particular areas of inquiry and applicable law. Within that context also meet and prepare Jim Wolfe for his testimony and otherwise get ready for the hearing.

**PLAN.PROJECTIONS:** Meet with Fred and Jim Wolfe regarding background and values of the certificates and properties; Prepare for meeting with Fred Billings and Jim Wolfe regarding Plan; Meeting with Fred Billings and Jim Wolfe regarding Plan; Email chain with Jim Wolfe regarding his projections; Conference with Fred and Jim regarding projections now that the redemption times are more or less upon us. Email to JB regarding Jim Wolfe's updated figures; Begin developing the questioning of our expert witness on the various issues; Bank and forth conferences with Jim Wolfe regarding obtaining an updated redeemed property list from the Counties; Review updated redeemed property analysis for Jim Wolfe.

**PLAN.WALKER:** Reviewed Walker Ventures LLC's Objection to Chapter 11 plan; Conference with Gallo and Fred regarding Walker's Objection to Plan; Emails with Joseph Angersola regarding the claim of Walker Ventures through the title insurance company; Review Walker Ventures' vote to reject the Plan; Conference with Joseph Angersola, Walker Ventures' lawyer, regarding Plan provisions with which he is concerned; Review parts of the file regarding the problem Angersola has with the amount of unsecured debt and determine where the escrow is; Research regarding Creditor's right to change its vote in good faith; Review Walker Ventures' Motion to Amend its ballot; Review Motion to Amend Walker Ventures' ballot.

**STAY.CENTRUST:** Review Centrust's Motion to Modify the Automatic Stay and analyze possible types of opposition thereto; Reviewed file and Motion for Relief from Stay documents; Conference with Fred Billings regarding Motion for Relief from Order regarding automatic stay; Draft Objection to Motion to Terminate the Automatic Stay; Draft Motion to Vacate Order granting the Motion to Terminate the Stay; Conference with Fred Billings regarding our Motion for Relief from Order regarding automatic stay; Meet with JB regarding next week's Motion; Conference with Billings regarding my conference today with the Bank's attorney; Conference with Ian Burns regarding the situation with the counties; Review email from Jim Wolfe regarding county collectors and tax redemptions already made; Drafting and filing of Supplementary Motion to Vacate the Centrust Stay Order; Attend Court-long call-re: Motion to Vacate the order granting relief from stay; Conference with Ian Burns in response to my email regarding what he wants to do on his stay Motion; Review ECF order notification regarding Centrust's Stay Motion; Attend status and stay hearing up today; Prepare for status and stay hearings up today; Court appearance on expert witness Motion; Review Order from Court regarding scheduling of Centrust's Motion to Extend time to Disclose its expert; Conference with Fred Billings regarding the Stay Motion; Review Jim Wolfe's spreadsheet; Review Centrust's expert report for initial impressions and facts; Conference with Fred Billings regarding the other side's expert report; Conference with Jim Wolfe regarding the fact that he did get the Centrust report and will send me back a spreadsheet comparing its analysis with his; Review Jim Wolfe's comparison spreadsheet; Conference with Fred Billings regarding status and his projections; Conference with Jim Wolfe to go over his spreadsheet comparison with Centrust's; Review email from Jim Wolfe regarding updated chart of redemptions; Conference with Jim Wolfe regarding his report, the need for a cover letter as expert, and timing needed on the Motion; Assembled documents in connection with Centrust's Motion for Relief from Stay for trial book; Develop the questioning of their expert witness on the various issues.

**STAY.CENTRUST.DISCOVERY:** Drafted Interrogatories and submitted them to KDM for review; Drafted Requests to Produce and submitted to KDM for review; Drafted requests to Admit; Conference with KDM regarding status of discovery and in which I received a new, modified assignment; Revised Document Production Requests; Conference with KDM regarding Discovery; Reviewed discovery so far; Served discovery; Conferences with KDM regarding Discovery; Revised Requests to Produce pursuant to KDM's instructions; Drafted a Certificate of Service for today's discovery; Revised Requests to Admit pursuant to KDM's instructions; Drafted Notices of Deposition in this case; Conferences with KDM regarding Depositions; Reviewed email from Burns regarding status of discovery; Email to Burns regarding agreement to discovery extension; Conference with Ian Burns regarding our requests to admit; Email to Burns regarding discovery and reviewed his response thereto; Reviewed Centrust's responses to our Requests to Admit; Reviewed discovery propounded by Centrust regarding its Stay Motion; Meet with JB regarding discovery;

Revise responses to Requests to Admit; Meet with JB regarding Requests to Admit; Meet with Fred Billings regarding Centrust's Requests to Admit; Email to Ian Burns requesting that Centrust comply with points (ii), (iv) and (v) of Federal Rule of Civil Procedure 26(a)(2); Reviewed Fashion House v. Kmart; Reviewed all files.

**STAY.CENTRUST.LIMINE:** Research regarding appropriate procedure for moving to bar expert testimony; Research regading Motion to Bar Expert testimony; Drafted Motion to Bar Expert Testimony; Drafted a Motion in Limine and submitted same to KDM for review; Review and revise Motion to Bar Centrust's Expert Testimony; Reviewed relevant law regarding our Motion to Bar Centrust's expert testimony; Revised the latest edition of the Motion to Bar Centrust's expert testimony; Research regarding exclusion of witnesses; Work with JB on the Motion to Bar the testimony of Centrust's expert witness; Reviewed Johnson v Hunt; Drafted Notices of Motion, Certificate of Service, Proposed Order and Minute Order; Final revisions to Bar Motion; Drafted a Motion to Bar Expert Testimony in which I combined the Motion in Limine and the Rule 37 Motion. Emailed same to KDM for review; Determined and scanned exhibits; Final conference with KDM regarding tomorrow's hearing; Review Centrust's Response to Motion to Bar their expert's testimony and strategize regarding how to reply at the hearing; Review Centrust's Response to our Motion to Bar Expert Testimony and corresponding exhibits; Determined exhibits to Centrust's Response and emailed same to KDM.

**STAY.CENTRUST.VACATE:** Filed Motion to Vacate regarding Order granting Centrust Stay Relief; Drafted Notice of Motion regarding Debtor's Rule 60 Motion to Vacate Order granting Centrust Stay Relief; Conferences with KDM regarding revised Motion to Vacate; Meetings with KDM regarding supplementary Motion to Vacate; Drafted supplementary Motion to Vacate and Notice thereof; Revised Motion to Vacate and related documents; Scanned documents and otherwise prepared Motion for KDM's final review and filing.

**STAY.WALKER:** Review Walker's Motion to terminate the stay and ECF Notice regarding the same; Conference with Elena Gallo regarding the status of the Walker Ventures State Court claim; Conference with Larson and his partner regarding Motion to Terminate the automatic stay and Walker's claim; Review the operative complaint; Conference with Fred Billings regarding state court claim; Conference with Elena Gallo regarding the status of the state court case.

20. All of the above referenced tasks directly benefitted the Estate, by permitting the Debtor to reach a compromise with its largest secured creditor, Centrust Bank, N.A., and to confirm the Debtor's First Amended Plan of Reorganization and Disclosure Statement.

21. During the Application Period, the Attorneys also prepared the instant Fee Application, which is required under Title 11 for compensation of professionals retained by the Estate.

22. The foregoing professional services and costs were necessary and appropriate to the administration of this bankruptcy case. The professional services performed were in the best interests of the creditors and parties in interest, and were provided without unnecessary duplication of effort or expense incurred by other professionals involved in the case. Compensation for the services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.

23. The professional services were performed expeditiously and efficiently. The Attorneys have exercised good faith in billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983).

24. Clearly, the Attorneys should be awarded the amount requested. Not only did the Attorneys undertake the work with the good faith hope of reorganizing the Debtor and ensuring compensation for all creditors herein, the Attorneys were able to secure a favorable result with respect to the same. Consequently, since the Attorneys have administered the estate to the extent that it is likely all Creditors will receive much more than they would have absent the Debtor's reorganization, the Attorneys deserve compensation for their services.

## §VI. Services Rendered, Time Involved, And Compensation And Costs Requested

25. The Attorneys represented the Debtor in this matter on an hourly basis, as set forth fully by **Exhibit A**.

26. The Attorneys' efforts have enabled the Debtor to retain possession of its Certificates, and enabled the Debtor and all creditors and parties in interest herein to maximize the ultimate capitalization with respect to the same. Furthermore, the Attorneys have been essential to administering this matter without substantial losses to the Debtor.

27. Accordingly, the Attorneys are entitled to compensation in the amount of **$65,664.00**.

28. Furthermore, the Attorneys incurred **$998.06** in costs connected to the administration of this case, and respectfully request reimbursement for the same. An itemized statement of costs incurred is also included at the end of the Billing Statements attached hereto as **Exhibit A**.

29. Moreover, the attorneys have rendered services and advanced costs totaling **$66,662.06** in this case.

30. Consequently, the Attorneys respectfully request that this Honorable Court award **$65,664.00** in fees and **$998.06** in costs, minus **$7,500.00** for payments already received for a total of **$59,162.06** in connection with their services regarding this Chapter 11 case.

WHEREFORE, Keevan D. Morgan and Joel E. Blumenfeld of Morgan & Bley, Ltd. respectfully apply to the Court for an award of fees and costs in the total amount of **$59,162.06**, for an Order authorizing and directing the Debtor to make prompt payment of the amount awarded and for all other and further relief in their favor as this Court deems fair and just.

Morgan & Bley, Ltd.

By: /s/  Keevan D. Morgan

Keevan D. Morgan
Joel E. Blumenfeld
Morgan & Bley, Ltd.
900 West Jackson Blvd.
Suite 4 East
Chicago, Illinois 60607
312.243.0006